IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ARICK WHITSON, *et. al*, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| Plaintiffs, | ) | 1-17-cv-1985-JPB |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF STOCKBRIDGE, *et. al*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ELTON ALEXANDER'S STATEMENT
OF MATERIAL FACTS**

COMES NOW Defendant Elton Alexander and, pursuant to LR 56.1(B)(1), submits these material facts to which these Defendant contends there is no genuine issue to be tried and shows this Honorable Court as follows:

**I.      Plaintiff Arick Whitson a/k/a Eric Smith**

1.

Plaintiff was born in 1968. (Deposition of Arick Whitson, hereinafter "Whitson Dep.", p. 10:14-15).

2.

Plaintiff lived in Ohio until 1987. (Whitson Dep., p. 13:4-8).

- 1 -

3.

In 2006, Plaintiff Arick Lafree Whitson changed his name from Eric Lavell Smith. (Deposition of Arick Whitson, p. 9:6, 9-11, 16).

4.

Since 2006, Plaintiff has continued to use the name Eric L. Smith. (Whitson Dep., p. 11: 1-6, 19-25; p. 23:14-25; p. 24: 1-6; p. 46: 20-23; D-Ex. 3; D-Ex. 9; D-Ex. p. 3).

5.

Plaintiff Whitson also goes by "Chef" and "Chef Eric." (Whitson Dep., p. 100: 18-24).

## II.    Plaintiff Whitson's Restaurant, BBQ Masters

6.

In 2016, Plaintiff Arick Whitson owned a barbecue restaurant on North Henry Boulevard in Stockbridge, Georgia. (Whitson Dep., p. 75: 25 – p. 76: 1-7).

7.

Barbecue Masters Concessions & Catering Group, inc., was the legal name of Plaintiff Whitson's restaurant at 5627 North Henry Boulevard. (Whitson Dep., p. 116: 15-23).

8.

Plaintiff Whitson formed a corporation called Barbecue Masters Concessions & Catering Group, inc.,[1] that administratively dissolved in 2017. (Whitson Dep., p. 67:15-17; p. 68: 2-13).

9.

Plaintiff Whitson ceased having a business[2] at 5627 North Henry Boulevard in 2016. (Whitson Dep., p. 117: 9-11).

10.

Plaintiff Arick Whitson opened a barbecue restaurant at 72 Highway 138 in Stockbridge, Georgia, in February of 2017. (Whitson Dep., p. 118: 1-5; p. 169: 10-17; p. 206: 15-19).

---

[1] Georgia Secretary of State records show that Plaintiff Whitson formed Barbecue Masters Concessions & Catering Group, inc., in 2015. A similarly-named BBQ Masters Concessions & Catering Group, Inc., was incorporated by Arick Whitson **and Eric Smith** in 2012 and administratively dissolved in 2017.

[2] Court records show that Plaintiff Whitson was evicted. <u>RJV-Wright Holdings, LLC, v. Georgia Championship Barbecue Company a/k/a Barbecue Masters, Inc. d/b/a BBQ Masters, and Arick Whitson, Individually</u>, Superior Court of Henry County Civil Action No. 2019SUCV000260.

11.

Plaintiff Whitson opened this new business under a different name, Georgia Championship Barbecue Company.[3] (Whitson Dep., p. 117: 14-25).

12.

Plaintiff Whitson is a sole proprietor. (Whitson Dep., p. 329: 2-8).

## III.   Defendant Elton Alexander

13.

Defendant Elton Alexander was elected as a member of the Stockbridge City Council in January of 2016. (Deposition of Elton Alexander, hereinafter "Alexander Dep.", p. 15: 15-21).

14.

No single councilmember can establish policy for the City. (Alexander Dep., p. 362: 4-6).

15.

To make official City policy requires three votes of the Stockbridge City Council with approval by the mayor. (Alexander Dep., p. 361: 23-25; p. 362: 1-3).

---

[3] Georgia Secretary of State records show that Whitson incorporated this entity in 2015.

16.

Defendant Alexander has no direct oversight over code enforcement, alcohol permits, sign permits, occupational permits or construction permits.  (Alexander Dep., p. 362: 9-20).

17.

As a member of Council, Defendant Alexander cannot tell staff to do anything. (Alexander Dep., p. 219: 19-23; Deposition of Hernitha Robinson, hereinafter "Robinson Dep.", p. 49: 9-10; ).

18.

Mr. Alexander describes himself as a First Amendment advocate who believes in disseminating information that is not confidential. (Alexander Dep., p. 33: 18-19; p. 34: 11; p. 35: 2-4; p. 118: 24-25; Robinson Dep., p. 16: 17-25; p. 23: 4-8; p. 58: 13-24; p. 59: 4-14).

19.

Mr. Alexander has had a long-standing interest in code enforcement. (Deposition of Camilla Moore/City of Stockbridge 30(b)(6), hereinafter "Stockbridge 30(b)(6) Dep.", p. 132: 17-19).

20.

Defendant Alexander is interested in all development throughout the county.
(Deposition of George Patterson, hereinafter "Patterson Dep.", p. 29: 10-11).

21.

In 2014, prior to being elected to the Council in 2015, Mr. Alexander started
a grass roots movement called "Because We Care Henry County – Atlanta South,"
promoting economic development and working to improve the aesthetics in the city
of Stockbridge and the entire South Metro area.  (Alexander Dep., p. 285: 18-23, 25;
p. 286: 1-9, 22-25; p. 287: 1-4, 21-24; p. 291: 5-14; and P-Ex. 146; Deposition of
Anthony Ford, hereinafter "Ford Dep.", p. 183: 20-25: p. 184: 1-2; and P-Ex. 146).

22.

Mr. Alexander uses his Facebook page as a tool to interact with his
constituents and to make sure that the public is informed of what is going on.
(Alexander Dep., p. 209: 22-24; p. 276: 15-18; p. 277: 4-5, 14-18, 24-25; p. 278: 1-
2; p. 361: 2-4, 11-13; Deposition of Michael Harris, hereinafter "Harris Dep.", p. 51:
10-18).

23.

Since 2014, Mr. Alexander has posted reviews on social media about
businesses that did not meet the city's code enforcement standards in an effort to

clean up Highway 138. (Alexander Dep., p. 199: 2-11; p. 250: 18-25; p. 251: 1 – 12;

p., 252: 13-16).

## IV.   Whitson Filed a Complaint about Alexander on January 30, 2017.


### 24.

On January 30, 2017, plaintiff Arick Whitson sent an email titled "Formal Complaint" to the Clerk of the City of Stockbridge, complaining about alleged corruption and harassment by a member of the Stockbridge City Council, Elton Alexander. (Whitson Dep., pp. 163:16-25; p. 164: 1, 9-10; p. 166: 25 and D-Ex. 18; Deposition of Vanessa Holiday, hereinafter "Holiday Dep.", p. 74: 13-17 and P-Ex. 7).

### 25.

On January 31, 2017, Mr. Whitson signed his complaint about Councilman Alexander and the clerk Vanessa Holiday notarized his signature. (Whitson Dep., p. 185: 6-9; p. 187: 10-16; p. 192: 4-7; p. 195: 13-23 and D-Ex. 21; Holiday Dep., p. 81: 8-13 and P-Ex. 10).

26.

City Clerk Holiday notified Mr. Alexander, and the entire City Council, of Mr. Whitson's complaint on January 31, 2017, or the following day. (Holiday Dep., p. 82: 10-15).

27.

The process followed by the City after receipt of a complaint about an official is to send it to the ethics board, that gives its determination to the City and if the ethics board moves it up to the Council, then the City Council decides the disposition. (Holiday Dep., p. 84: 7-22; Ford Dep., p. 86: 11-14, 21-25).

28.

Plaintiff Whitson's complaint was filed in conjunction with four other complaints against Alexander in his official role. (Alexander Dep., p. 20: 17-22; Alexander Dep., p. 265: 10-17; Holiday Dep., p. 87: 11-18, 21-24; p. 113: 1-7; p. 130: 24-25; p. 131: 1-2; p. 221: 1-9).

29.

Defendant Alexander denies the allegations made by Plaintiff Whitson in the complaint.  (Alexander Dep., p. 20: 17-22; p. 372: 1-4).

30.

Defendant Alexander submitted his response to the allegations via email. (Alexander Dep., p. 225: 16-17; Robinson Dep., p. 31: 19-22).

31.

The City of Stockbridge retained an independent investigator to investigate Mr. Whitson's complaint. (Whitson Dep., p. 209: 24-25; p. 210: 1; p. 225:19-24; Alexander Dep., p. 372: 10-13; Holiday Dep., p. 178: 21-22; p. 179: 5-6).

32.

On March 4, 2017, the investigator sent Mr. Whitson a letter inviting him to send them any information regarding his complaint. (Whitson Dep., p. 207: 3-16; p. 227: 2-14; and D-Ex. 24).

33.

The investigator interviewed Mr. Whitson, Mr. Alexander, and other witnesses, and recorded the interviews. (Whitson Dep., p. 209: 15-17; 211: 1-6; 213: 8-10; Alexander Dep., p. 338: 13-16; p. 372: 21-25; p. 373: 1-3).

34.

The Special Investigative Counsel to the City of Stockbridge wrote a report, concluding, "Based upon the review of the evidence and testimony, it [is] our recommendation that this complaint be dismissed for failing to state facts sufficient

to invoke the disciplinary jurisdiction of the City Council." (Whitson Dep., D-Ex. 25, p. 3).

35.

The City of Stockbridge Ethics Commission adopted the recommendations of the investigator. (Alexander Dep., p. 315: 20-25; p. 316: 1).

36.

After he filed his complaint, Plaintiff Whitson appeared on news stories on WSB-TV. (Whitson Dep., p. 278: 21-25).

37.

The day after Mr. Whitson appeared on television about his complaint, about five or six people called Defendant Alexander to tell him that Plaintiff's name is Eric Smith and he had behaved in a similar manner toward them. (Alexander Dep., p. 131: 15-19; p. 133: 14-18).

38.

Bernice Randolph made an unsolicited call to Defendant Alexander to tell him that Plaintiff Whitson had raped her in Michigan and left her there after working a festival, and she had gone to the police. (Alexander Dep., p. 131: 20-25; p. 132: 19-20, 24-25; p. 133: 1-3; p. 175: 10-12; p. 179: 16-17).

39.

Ms. Randolph also forwarded information regarding fraud allegations against Plaintiff Whitson. (Alexander Dep., p. 132: 2-4).

40.

Mr. Alexander received an unsolicited call from a woman advising him that she had a protective order against Plaintiff Whitson and that she had been called in to testify against him in other cases. (Alexander Dep., p. 183: 20-25; p. 184: 1-25; p. 185: 1-7).

41.

Marvin Johnson, who was seeing Mr. Whitson's former girlfriend Vanessa Reels, provided information to Defendant Alexander about a TPO hearing on March 8, 2017, and other information involving Mr. Whitson. (Alexander Dep., p. 150: 2-6; p. 321: 13-14, 19-25; p. 322: 1-2).

42.

Defendant Alexander forwarded information about crimes that were reported to him to the county prosecutors because he felt it was his responsibility to notify the authorities of reported criminal activity. (Alexander Dep., p. 132: 5-7, 8-13; p. 213: 12-16, 20-25; p. 218: 7-9).

43.

Plaintiff Whitson did not complain to the City or provide notice to the City regarding the alleged incident that is the subject of his ethics complaint prior to the filing of the ethics complaint in late January 2017. (Harris Dep., p. 210: 22-25 – p. 211: 1-3).

### V.   Code Enforcement

44.

The purpose of code enforcement is to protect property values, to help residents take better care of their property, to make a livable community. (Deposition of Thurman D. Johnson, hereinafter "Johnson Dep.", p. 113: 18-23).

45.

Any grass beyond the right-of-way must be maintained by the property owner. (Stockbridge 30(b)(6) Dep., p. 103: 1-14).

46.

In 2016, the City changed its policy regarding what grass would be mowed by the city, and this change affected the North Henry Boulevard location of BBQ Masters. (Stockbridge 30(b)(6) Dep., p. 134: 17-23).

47.

Anyone, including councilmembers, can make a complaint to code enforcement. (Johnson Dep., p. 102: 20-21; Stockbridge 30(b)(6) Dep., p. 131:12-15).

48.

If Code Enforcement Officer T.D. Johnson does not see a violation and no one complains of a violation, he has no reason to go the property. (Johnson Dep., p. 100: 11-13).

49.

If any citizen, including a councilmember, sees a possible code violation, he or she can say something to Code Enforcement as a citizen. (Alexander Dep., p. 220: 8-14).

50.

T.D. Johnson testified it was not unusual for City Council members or the mayor to request Code Enforcement to look into a potential code violation. (Johnson, Dep., p. 103:16-21; p. 104:6; p. 105:22, 24; p. 107:13-16; p. 108: 6-10).

51.

Alexander never called Code Enforcement and told them to go to Plaintiffs' business. (Alexander Dep., p. 220: 15-16. *See also,* Deposition of Lakeisha Gantt, hereinafter "Gantt Dep.", p. 88: 22-25).

52.

The code enforcement officer has discretion to decide whether to issue a citation or a warning to a business. (Alexander Dep., p. 364: 20-25; p. 365: 1-3; Harris Dep., p. 190: 18-22).

53.

The City of Stockbridge did not issue a code enforcement citation or charge to Mr. Whitson's restaurant in 2016, 2017, 2018, or 2019. (Whitson Dep., p. 173: 5-23; Stockbridge 30(b)(6) Dep., p. 27: 3-25).

**A. Code Enforcement at BBQ Masters North Henry Road Location**

54.

On August 23, 2013, the Stockbridge Code Enforcement Officer recorded that an employee called to warn Code Enforcement that the owner of BBQ Masters was building without a permit. (Johnson Dep., P-Ex. 183).

55.

On August 23, 2013, in response to the complaint that BBQ Masters and Arick Whitson were changing things around without a building permit, and the health department directed Whitson to reinstall sinks that had been removed. (Whitson Dep., p. 236: 3-9; p. 237: 1-5; D-Ex. 26).

56.

Plaintiffs have stipulated that this occurred before Defendant Alexander was on the City Council. (Whitson Dep., p. 237: 10-13).

57.

On October 11, 2013, a city inspector investigated an anonymous complaint that smoke was coming from a cooking pit at Plaintiff Whitson's restaurant and being blown into other stores. (Whitson Dep., p. 240: 3-5, 19-24; p. 241: 5-10; D-Ex. 27; Johnson Dep., p. 93: 9-16).

58.

On September 15, 2015, the city gave Plaintiff Whitson a warning of excessive trash, garbage and debris; uncontained flow of cooking oil from exterior cooking trailer; and uncontained spillage of oil and grease in the parking area that Whitson resolved by pressure washing the parking lot.  (Whitson Dep., p. 242:21-25; p. 243: 1-7; D-Ex. 28; Johnson Dep., p. 121: 3-10).

59.

The September 15, 2015, warning was initiated by a complaint from a water department employee. (Whitson Dep., D-Ex.28, p. 3).

60.

While on a routine patrol on May 26, 2016, Code Enforcement Inspector TD Johnson observed trash and debris that "looked really bad" at BBQ Masters. (Johnson Dep., p. 116: 8-13; p. 118: 24-25: *see* D-Ex. 29 and D-Ex. 30, p. 4).

61.

On May 26, 2016, the City gave Plaintiff BBQ Masters a warning notice about a complaint that Plaintiff Whitson resolved by cleaning debris and trash. (Whitson Dep., p. 243: 16-25; p. 244: 6-9; D-Ex. 29; Johnson Dep., p. 49: 4-7; p. 118: 20-25; D-Ex. 29; P-Ex. 178).

62.

Councilman Alexander did not ask Mr. Johnson to visit BBQ Masters on May 26, 2016. (Johnson Dep., p. 116: 25; p. 117: 1-2).

63.

Plaintiff Whitson did not consider the May 26, 2016, warning to be harassment. (Whitson Dep., p. 244: 10-16; p. 245: 12-16).

64.

Plaintiff Whitson admitted that the City "had a valid point with the trash in the back." (Whitson Dep., p. 247: 5-11).

65.

Before Plaintiff Whitson filed his complaint against Defendant Alexander, an 18-wheeler hit Plaintiffs' trailer, knocking it off its blocks and spilling oil; T.D. Johnson came and told Whitson that he needed to clean up the spill, and Whitson complied. (Whitson Dep., p. 229:11-23).

66.

In 2016, Stockbridge Code Enforcement Officer T.D. Johnson visited Mr. Whitson's restaurant to ask about his sign. (Whitson Dep., p. 170: 17-22; p. 171: 7-12).

67.

On August 18, 2016, T.D. Johnson issued a warning notice to Plaintiff Whitson, on the ground that changeable copy signs are prohibited in the city limits. (Johnson Dep., p. 50: 18-24; P-Ex. 178, pp. 8, 13, 15).

68.

By email dated September 6, 2016, Plaintiff Whitson informed Mr. Johnson that he believed his sign was allowable, and he promised to put tires and a tag on his trailer. (Johnson Dep., p. 52: 6-25 and P-Ex. 90).

69.

Changeable copy boards are prohibited in the City of Stockbridge. (Johnson Dep., p. 52: 18; p. 54: 21-22; and P-Ex. 178, p. 8).

70.

T.D. Johnson does not recall ever having a conversation with Councilman Alexander about BBQ Masters. (Johnson Dep., p. 15: 9-13).

71.

Defendant Alexander never directed Code Enforcement Officer T.D. Johnson to inspect BBQ Masters. (Johnson Dep., p. 15: 18-25; p. 16: 13-14).

72.

Defendant Alexander never asked T.D. Johnson to go to BBQ Masters. (Johnson Dep., p. 16: 23-25; p. 17: 7-8).

73.

In 2016, someone from a dialysis place complained about the grill that had not been cleaned. (Johnson Dep., p. 18: 20-24).

74.

Johnson did not see the grill on that visit, but he did see a lot of trash and debris and oil coming out of the back of a trailer. (Johnson Dep., p. 19: 1-6).

75.

In 2016, Mr. Whitson had a trailer on the premises of his restaurant. (Whitson Dep., p. 114: 11-18; p. 177:13-21 and D-Ex. 23; Johnson Dep., P-Ex. 178, p. 3).

76.

Mr. Whitson used the trailer as a kitchen for his restaurant. (Whitson Dep., p. 114: 11-18; p. 179: 24-25).

77.

The trailer was on blocks. (Whitson Dep., p. 175: 1-13; Alexander Dep., p. 190: 18-19; Johnson Dep., P-Ex. 178, p. 3).

78.

The trailer had a piece of plywood across the front of it. (Whitson Dep., p. 178: 4-12 and D-Ex. 23; Alexander Dep., p. 190: 17-18; Johnson Dep., P-Ex. 178, p. 3).

79.

Dale Hall, T.D. Johnson, and Justin Kilgore of the City of Stockbridge met with Mr. Whitson about the trailer and told him to put a tag and some tires on it.

(Whitson Dep., pp. 174: 4-14; p. 175: 11-13; p. 176: 14-16; p. 180: 6-20; Johnson Dep., p. 80: 22-25; p. 81: 2-13).

80.

T.D. Johnson's notes show that he observed trash/debris at BBQ Masters on May 26, 2016; the debris was removed on re-inspection on May 30, 2016; on July 6, 2016, Johnson left a message for Whitten [sic] to contact him; Whitten [sic] called to state that he could meet on July 13, 2016; the July 13, 2016 meeting had to be rescheduled because Mr. Whitson was going out of town for two weeks; on August 2, 2016, Mr. Whitson called to reschedule due to an emergency in the family. (Whitson Dep., D-Ex.29; Johnson Dep., p. 115: 12-25; p. 116: 1-5; and D-Ex. 29).

81.

Defendant Alexander had no knowledge about all these visits from code enforcement to address trash and an oil spill in the parking lot until after they had occurred; he was not involved in code enforcement's warnings to Plaintiff Whitson. (Alexander Dep., p. 191: 3-23).

**B. <u>Code Enforcement at New Location.</u>**

82.

On January 27, 2017, T.D. Johnson observed excessive signage that was visible from the road at the business location of 72 Highway 138. (Johnson Dep., p. 117: 16-25; p. 118: 1-8, 12-18).

83.

Councilman Alexander did not ask Officer Johnson to go to BBQ Master on January 27, 2017. (Johnson Dep., p. 118: 9-11).

84.

The signs Johnson observed were not permitted. (Johnson Dep., pp. 11-12: 1-3).

85.

On March 31, 2017, the City of Stockbridge Code Enforcement issued a warning notice to Plaintiffs for having a junk vehicle on the property and for failing to post the address after a neighboring business sent an email to the City complaining of a box truck with a possibly expired tag that is an "eyesore." (Whitson Dep., D-Ex. 30, pp. 6-9; Johnson Dep., p. 57: 12-17; and P-Ex. 180).

86.

On August 2, 2017, Defendant Alexander complained to Code Enforcement about excessive smoke coming from BBQ Masters billowing across Highway 138, but the city manager did not send code enforcement to the location. (Johnson Dep., p. 111: 11-20; Alexander Dep., p. 220: 18-25; p. 221: 1-5, 14-16, 24-25).

87.

The only complaint Defendant Alexander ever made to Code Enforcement about BBQ Masters was about smoke at the location. (Johnson Dep., p. 16: 1-9; p. 20: 19-20; Alexander Dep., p. 222: 1-8).

**III. Business License Application**

88.

Uneeda Smith-Sellers was the Occupational Tax Clerk for the City of Stockbridge from 2014 – 1018. (Deposition of Uneeda Smith-Sellers, hereinafter "Smith-Sellers Dep.", p. 7:4-9).

89.

Plaintiffs filed an application for a business license and a permit to sell alcohol. (Smith-Sellers Dep., p. 14: 19-23, p. 17: 11-16; and P-Ex. 163).

90.

The City issued Plaintiffs' business license on February 15, 2017. (Smith-Sellers Dep., p. 19: 20).

**IV. Alcohol License Application**

91.

Plaintiff Whitson used himself, Eric L. Smith, as a character reference on his commercial occupation tax/alcohol license application. (Whitson Dep., p. 316:1-13; p. 317: 12-22; D-Ex.37).

92.

Giving false information on an application will result in a denial of an alcohol license. (Harris Dep., p. 208: 14-18; Smith-Sellers Dep., p. 84: 1-16; Stockbridge 30(b)(6) Dep., p. 140: 1-3).

93.

A felony criminal conviction will prevent an applicant from receiving an alcohol license. (Stockbridge 30(b)(6) Dep., p. 136: 13-19; p. 137: 2-6; p. 139: 11-14).

94.

Before receiving a copy of Plaintiff Whitson's ethics complaint, Defendant Alexander had no knowledge that Plaintiffs had applied for an alcohol license. (Alexander Dep., p. 354: 13-20).

95.

Defendant Alexander had no power to affect Plaintiffs' alcohol license. (Alexander Dep., p. 353: 14-17).

96.

Defendant Alexander had no knowledge of the application process or how either City staff or Henry County handled them. (Alexander Dep., p. 219: 16-18).

97.

Plaintiff Whitson submitted an alcohol license application to the City for a license to sell alcohol at his new business. (Whitson Dep., p. 259: 14-19).

98.

The City issued to Plaintiff Whitson a refund check of the license application fee that Whitson deposited in his bank account. (Whitson Dep., p. 260: 23-25; p. 261: 7-8; Harris Dep., p. 67: 16-21 and P-Ex. 32).

99.

The city manager is the final decision-maker with regard to alcohol permits. (Harris Dep., p. 16: 4-11; Holiday Dep., p. 195: 21-23).

100.

The City did not process Plaintiffs' alcohol license application based on an understanding that Mr. Whitson withdrew his application. (Smith-Sellers Dep., p. 32: 11-25).

101.

Ms. Smith-Sellers inquired whether the City could issue a refund of the application fee. (Smith-Sellers Dep., p. 23: 11-15, 24-25; p. 24: 1-2 and P-Ex. 5).

102.

Once an application is withdrawn, the City does not continue to process an application. (Harris Dep., p. 169: 9-15; p. 171: 6-15; p. 192: 18-22; Holiday Dep., p. 62: 20-25; Smith-Sellers Dep., p. 22: 4-6, 16-19).

103.

When an application is withdrawn, the City shreds all background information per state law. (Smith-Sellers Dep., p. 25: 19-22; p. 36: 15-21; p. 43: 12-15; Stockbridge 30(b)(6) Dep., p. 117:22-25: p. 118: 1-2, 9-24).

104.

The City issued a refund check based on an understanding that the applicant requested to withdraw his application. (Harris Dep., p. 68: 4-5, 13-15; p. 169: 19-20; p. 207: 23-25; p. 208: 1; Holiday Dep., p. 58: 23-25; p. 59: 1-7 and P-Ex. 5; Smith-Sellers Dep., p. 20: 17-24).

105.

The refund check was approved by the city manager on April 12, 2017. (Smith-Sellers Dep., p. 29: 11-16; p. 30: 16-25; p. 31: 1-3).

106.

Although the information needed to consider Plaintiffs' alcohol license application was shredded, Plaintiffs could reapply. (Smith-Sellers Dep., p. 36: 15-21; p. 47: 1-21).

107.

Plaintiff Whitson never reapplied for an alcohol license. (Whitson Dep., p. 261: 11-17).

108.

Plaintiff Whitson did not file an appeal from any denial of an alcohol license. (Whitson Dep., p. 263: 7).

109.

Plaintiff Whitson did not file a petition for certiorari to the superior court contesting any denial of an alcohol license. (Whitson Dep., p. 263: 22-25; p. 264: 4).

110.

No other applicant for an alcohol permit from the City of Stockbridge withdrew its application. (Harris Dep., p. 170: 15-22; Holiday Dep., p. 65: 8-13; p. 194: 1-15; Stockbridge 30(b)(6) Dep., p. 122: 23-25; p. 123: 5-7).

111.

Ms. Smith-Sellers did not discuss Plaintiffs' alcohol license application with anyone on the City Council. (Smith-Sellers Dep., p. 35: 12-14).

112.

Defendant Alexander did not talk to Ms. Smith-Sellers about the business license or alcohol permit filed by Plaintiffs. (Smith-Sellers Dep., p. 67: 21-25; p. 68: 1).

113.

Defendant Alexander never emailed, texted, or talked to City Clerk Holiday about Plaintiffs' application for an alcohol permit. (Holiday Dep., p. 69: 1-7).

114.

City Manager Harris does not recall having any conversations about Plaintiffs' alcohol license application with Defendant Alexander. (Harris Dep., p. 172: 1-4).

115.

Defendant Alexander had nothing to do with Plaintiffs' alcohol license application. (Alexander Dep., p. 351: 1-10).

116.

Defendant Alexander does not know the alcohol license procedure. (Alexander Dep., p. 352:23-24).

**VI.  Sign Application**

117.

Defendant Alexander has nothing to do with Mr. Whitson's permits, signs, or alcohol license applications. (Alexander Dep., p. 219: 14-16).

118.

Defendant Alexander had no knowledge of the City of Stockbridge sign process in 2017. (Alexander Dep., p. 312: 15-16).

119.

The Stockbridge City Council did not direct staff. (Deposition of Justin Kilgore, hereinafter "Kilgore Dep.", p. 16:6).

120.

Plaintiff BBQ Masters applied for signs at the 72 Highway 138 location. (Kilgore Dep., p. 39: 1-10; P-Ex. 190).

121.

Justin Kilgore was in charge of the sign permitting process for the City of Stockbridge at the time BBQ Masters was applying for a sign. (Kilgore Dep., p. 41: 2-6).

122.

In 2016 and a portion of 2017, the City of Stockbridge and Henry County had an intergovernmental agreement whereby Henry County functioned as the official planning and zoning department for the City. (Kilgore Dep., p. 13: 21-25; p. 14:1-5; Patterson Dep., p. 32: 10-15; Alexander Dep., p. 326: 6-9).

123.

During this period, Henry County, functioning as the city's building department, would handle any form of structure inspection but the zoning function

of sign permits would go through a cursory review at Henry County. (Kilgore Dep., p. 14: 13-19).

124.

Henry County did not perform site visits, and it was up to the City to inspect a site in person and to make a determination whether to grant a permit based on its ordinances. (Stockbridge 30(b)(6) Dep., p. 71: 2-8).

125.

The City had final oversight on sign permits. (Kilgore Dep., p. 15:1-10).

126.

As a city planner from April of 2016 to March of 2017, Justin Kilgore reviewed sign permits after Henry County returned the applications to the City and Kilgore would make the final decision. (Kilgore Dep., p. 13: 3-14; p. 37:17-22).

127.

Justin Kilgore, who was responsible for sign permits for the City, coordinated with code enforcement insofar as code enforcement would let him know when they saw signs, and they would ask if permits were available for the signs they saw. (Kilgore Dep., p. 25: 13-21).

128.

On January 26, 2017, the City of Stockbridge denied Plaintiff Barbecue Masters' sign permit application based on city requirements. (Whitson Dep., Exhibit D-Ex. 31; Kilgore Dep., P-Ex. 190; Patterson Dep., p. 11: 9-11).

129.

Defendant Alexander had nothing to do with Plaintiffs' application for a sign permit. (Alexander Dep., p. 351: 8-10; p. 362: 15-16).

130.

Defendant Alexander did not know that Plaintiffs had been denied a sign permit. (Alexander Dep., p. 350: 2-13).

**A. Denial of the Wall Sign**

131.

The application for a wall sign was denied because the photographs submitted with the application did not show window signs that were on the building at the time of the denial; the window signs that had been installed were making the building out of compliance with the city's sign ordinance due to excess signage. (Kilgore Dep., p. 44: 4-16; p. 45: 7-16; p. 78: 20-25).

132.

Plaintiffs did not have permits for their window signs. (Kilgore Dep. p. 44: 15-19; p. 45: 1-5).

133.

It is best practice for code enforcement to visit the businesses that apply for a sign. (Kilgore Dep., p. 80: 14-22).

134.

The City performed a site visit regarding Plaintiffs' sign application, but the County did not. (Stockbridge 30(b)(6) Dep., p. 132: 9-15).

135.

Justin Kilgore does not know how Code Enforcement measured the window signs to check for excessiveness. (Kilgore Dep., p. 76: 18-19).

136.

Most of the window signs at the BBQ Master Highway 138 location were painted on the outside of the windows. (Johnson Dep., p. 88: 14-17; and P-Ex. 179).

137.

Code Enforcement regulates signs on the exterior of the property, not the interior. (Johnson Dep., p. 88: 12-13).

138.

The signs at BBQ Masters cover the entire window. (Johnson Dep., p. 88: 18-20 and P-Ex. 179).

139.

Other businesses in Stockbridge have interior signs that do not cover the entire window. (Johnson Dep., p. 88: 18-24).

140.

Justin Kilgore did not treat BBQ Masters differently than any other business applying for a wall sign. (Kilgore Dep., p. 79: 18-23).

141.

No city employee encouraged or pressured Justin Kilgore to deny Plaintiffs' sign application. (Kilgore Dep., p. 79:25; p. 80: 1-3).

142.

If Plaintiffs had removed the excess signage, the City would have granted his application for a wall sign. (Kilgore Dep., p. 81: 3-6).

143.

Mr. Kilgore denied other sign permits while he worked for the City of Stockbridge. (Kilgore Dep., p. 81: 13-15).

144.

After a sign permit is denied, other applicants took remedial actions to have their applications approved. (Kilgore Dep., p. 81: 22-25; p. 82: 1).

145.

Plaintiffs later obtained approval for a wall sign. (Stockbridge 30(b)(6) Dep., p. 135: 10-14).

**B. Denial of a Pole Sign.**

146.

Plaintiff Whitson's pole sign application was denied because the applicant did not submit proof that it was in compliance with section 8.12.100F, the City's grandfather clause on signage. (Kilgore Dep., p. 44: 17-19; p. 51: 2-4).

147.

If the building was vacant for a certain amount of time, the property would lose its grandfather status. (Kilgore Dep., p. 48: 11-14).

148.

With Plaintiffs' application, it came to the City's attention that the county was not sending sign permits to the city for final approval. (Kilgore Dep., p. 51: 12-14; p. 58: 15-24).

149.

There were other applications that came to Justin Kilgore's attention that were treated by the county with a hold. (Kilgore Dep., p. 51:19-25; p. 52: 1).

150.

Business licensing and sign permits are two separate processes in the City of Stockbridge for two separate codes. (Kilgore Dep., p. 48: 8-9).

151.

Plaintiff Whitson attended a meeting in Henry County regarding the denial of his sign application. (Whitson Dep., p. 217: 16-25; p. 218:1).

152.

At the meeting, an individual informed Plaintiff Whitson that the seafood restaurant that previously located the building where he was opening a restaurant on Highway 138 vacated in August [of 2016]. (Whitson Dep., p. 219: 16-19).

153.

The individual at the Henry County meeting stated that the County should not have approved Whitson's sign permit, because the City's code provides for a three month grandfather period. (Whitson Dep., p. 220: 3-6, 11-13).

154.

Plaintiffs later obtained approval for a pole sign. (Stockbridge 30(b)(6) Dep., p. 135: 16-18).

**VII.   Alexander Observations of BBQ Masters.**

**A. Ride Along to View Highway 138 Corridor.**

155.

In June of 2016, Defendant Alexander attended a ride-along organized by Dale Hall through the City of Stockbridge to note businesses along the Highway 138 corridor that needed to come into compliance with the City code. (Alexander Dep., p. 192: 5-9; p. 327: 22-25; p. 328: 1, 7-8; p. 382: 16).

156.

After the ride-along, the code enforcement officers started paying more attention to the whole area. (Johnson Dep., p. 24: 19-21).

157.

At this time, City Council was working on an overlay district for the Highway 138 corridor. (Kilgore Dep., p. 21: 22-25; p. 22: 1-2).

158.

On the ride-along, Defendant Alexander observed a number of businesses that were not in compliance with the City Code. (Alexander Dep., p. 328: 16-21; p. 329: 1-4 and D-Ex. 29; Johnson Dep., p. 32: 22-25; p. 33: 1-4).

159.

During the ride-along, Defendant Alexander observed a trailer on the premises of BBQ Masters that was on bricks with a board over its window. (Alexander Dep., p. 328: 24-25).

160.

Defendant Alexander made comments about how bad the city looked through his emails, but he said no more about BBQ Masters than any other business. (Johnson Dep., p. 34: 9-11).

161.

After the ride-along, Justin Kilgore became aware of Councilman Alexander's complaints about the Highway 138 corridor. (Kilgore Dep., p. 19: 3-8).

162.

T.D. Johnson reported to Dale Hall, the administrative services director. (Johnson Dep., p. 26:9-10; Kilgore Dep., p. 20: 10-12).

163.

Defendant Alexander never directed Code Enforcement to inspect BBQ Masters.  (Johnson Dep., pp. 15-16: 24-1; pp. 116-117: 25-2; p. 117: 3-6; p. 118: 5-11; p. 119:14, 22-25).

164.

Prior to the ride-along, Code Enforcement Officer T.D. Johnson already was addressing issues at BBQ Masters, but there were so many issues there that not all had been resolved. (Johnson Dep., p. 25:18-25; p. 26: 1-3).

**B. Alexander Noticed New Business Preparing to Open.**

165.

In December of 2016, Defendant Alexander saw a new business and he stopped by to talk to the proprietor, not knowing that Plaintiff Whitson owned the business. (Whitson Dep., p. 319: 17-25; p. 320: 1; Alexander Dep., p. 193: 1-13, p. 369:14-25).

166.

Mr. Alexander approached the contractor, who said Mr. Alexander would have to talk to the owner and then got into his truck and left the premises. (Alexander Dep., p. 193: 15-21).

167.

Then, Mr. Whitson came outside, but Mr. Alexander still did not know who he was. (Alexander Dep., p. 193: 21-23).

168.

At that point, Mr. Whitson told Mr. Alexander who he was. (Alexander Dep., p. 193: 24-25).

169.

Mr. Alexander asked Mr. Whitson what business he had coming to the city. (Alexander Dep., p. 194: 2-4).

170.

This conversation in the parking lot of the new location took place approximately three or four minutes. (Whitson Dep., p. 321: 6-15).

171.

Although Mr. Alexander never entered the building, based on his observations, it looked like the restaurant was undergoing major renovations, including reconfiguring booths, to the building since it was a seafood restaurant. (Alexander Dep., p. 245: 24-25; p. 246: 1-4, 23-25; p. 247: 1-6).

### C. Alexander Inquired about Building Permits.

172.

In December of 2016, after speaking to Mr. Whitson in the parking lot, Mr. Alexander contacted George Patterson of Henry County to ask if the county had approved any permits for that particular location. (Alexander Dep., p. 196: 6-12; p. 327: 7-9; p. 371: 6-14, 24-25; Patterson Dep., p. 13: 6-7; p. 23: 21-25; p. 24: 1).

173.

George Patterson is the director of the Henry County Building Department. (Patterson Dep., p. 5: 22-24).

174.

At that time, there was no permit. (Patterson Dep., p. 13: 7; p. 14: 4-10).

175.

Mr. Patterson informed Mr. Alexander that there was no permit for 72 Highway 138. (Patterson Dep., p. 16: 23-25; p. 17: 1-3; Alexander Dep., p. 245: 22-24; p. 246: 9-16).

176.

Defendant Alexander did not speak to anyone in the Henry County Planning and Zoning Department, except George Patterson, about BBQ Masters. (Alexander Dep., p. 325: 8-12).

177.

County inspectors did not go to 72 Highway 138 in 2016 or 2017 to review the work being done on the premises; they do not go to the structure if it is inside the city. (Patterson Dep., p. 13:13-16; p. 22: 2-10).

178.

Mr. Alexander never told Mr. Patterson anything negative about Mr. Whitson. (Patterson Dep., p. 25: 17-19).

179.

Every time Defendant Alexander sees some new construction or new business, he contacts George Patterson to inquire what is going on at that location and to ask if the business has a permit. (Patterson Dep., p. 29: 4-17).

180.

If there is no permit, Henry County turns the matter over to code enforcement. (Patterson Dep., p. 21: 19-23).

181.

The county would not be aware if there were any major renovations going on at that site. (Patterson Dep., p. 13: 22-25).

## VIII.  Plaintiff Whitson's Litigation History

### A.  Domestic

182.

In Clayton County in 2001, Whitson pled *nolo contendere* to charges of simple battery, obstructing/hindering an emergency telephone call, and making harassing phone calls. (Exhibit 1).

183.

These Clayton County charges stemmed from Plaintiff Whitson's break-up with girlfriend, Gernelle Lewis, who alleged Mr. Whitson became violent and attacked her when she ended the relationship. (Exhibit 2 and Exhibit 16, pp. 4-5).

184.

Ms. Lewis stated that, after she broke up with Whitson, he proceeded to make harassing phone calls to her employer which caused her personal and professional problems. (Exhibit 16, pp. 4-5).

185.

Plaintiff Whitson was convicted on a felony charge of making a false statement, which subsequently was dismissed, and on a misdemeanor charge of making a false report of a crime. (Whitson Dep., p. 107: 3-4, 11-12, 17-25).

186.

Plaintiff Whitson was convicted by a jury of a misdemeanor charge of stalking. (Whitson Dep., p. 109:11-14, 24-25; and D-Ex.14).

187.

A Stalking Twelve Month Protective Order was entered against Plaintiff on March 8, 2017. (Whitson Dep., p. 33: 15-24; and D-Ex. 5; Alexander Dep., p. 134: 3-9; *See* Exhibit 18.

188.

On June 22, 2009, a Stalking Protective Order was entered against Plaintiff Whitson in the case of *Latosha Cooper v. Arick Whitson*. (Whitson Dep., p. 35:9-17 and D-Ex. 6; *See* Exhibit 17).

189.

On August 30, 2010, a Stalking Three Year/Permanent Protective Order that ordered Whitson to receive appropriate psychiatric or psychological services was entered against Plaintiff in the matter of *Latosha Cooper v. Arick Whitson*. (Whitson Dep., p. 36:12-25 and D-Ex. 7; *See* Exhibit 17).

190.

Defendant Alexander attended the March 8, 2017, hearing regarding the 12-month protective order entered to prohibit Plaintiff Whitson from contacting

Vanessa Reels, where Ms. Reels testified that Plaintiff Whitson violated her with revenge porn. (Alexander Dep., p. 179: 13-16).

191.

At his September 25, 2018, criminal trial, the prosecution presented evidence that Plaintiff Whitson had engaged in revenge porn by sending intimate photos and videos to his ex-girlfriend's mother, son, daughter, friends and co-workers. (Exhibit 3).

192.

During this criminal trial, Latosha Cooper-Edwards testified that after she broke up with Whitson, he emailed her friends, family, work, including the corporate office of her finance company. (Exhibit 4).

193.

The testimony confirmed that Whitson sent emails to Cooper-Edwards' contacts on a daily basis that were three to four pages long and contained false, derogatory and sexually explicit information. (Exhibit 4).

### B. Serial Fraudulent Activity

194.

Demetria Jefferson filed a lawsuit against Eric Smith and Barbecue Masters Restaurant alleging that the defendants used deceptive means to obtain monies for services by falsifying documents. (Whitson Dep., p. 40: 8-10).

195.

On February 22, 2016, Ms. Jefferson obtained a judgment against Plaintiff in the amount of $17,975. (Whitson Dep., D-Ex. 8).

196.

In a bench trial of an action filed by KBN Television alleging that Plaintiff Whitson engaged in theft of services by deception, Plaintiff Whitson testified that he signed a contract with the name Eric Smith, which was not his legal name at the time. (Whitson Dep., p. 46: 20-23; p. 48: 5-11; D-Ex. 9, p. 3).

197.

On October 25, 2016, the State Court of Henry County entered a judgment in favor of Plaintiff KBN Television against Defendant BBQ Masters, Inc., and against Defendant Arick Whitson a/k/a Eric Smith, finding that Whitson deceived

KBN with the intent to avoid payment. (Whitson Dep., p. 45:1-25; p. 48: 12-17; D-Ex. 9).

198.

Franklin Hall and Jennifer Hall, doing business as Innovative Sounds, filed an action alleging theft of services by deception against Plaintiff Arick Whitson; Innovative Sounds obtained a judgment on December 6, 2019. (Exhibit 15; Whitson Dep., p. 53: 7-14 and D-Ex. 11).

199.

Bernice Randolph, a former festival worker for Plaintiffs, reported to the police that Plaintiff Whitson abandoned her in Michigan and refused to pay her for her work. (Whitson Dep., p. 301: 23-25; p. 302: 1).

200.

Ms. Randolph did not drive back to Georgia with Plaintiff Whitson, and he does not know how she got back. (Whitson Dep., p. 302: 13-21).

201.

Wendy Dore was the boss of a Michigan festival who claimed that Plaintiff Whitson did not pay money Whitson owed in connection with the festival. (Whitson Dep., p. 304: 15-18).

202.

Plaintiff Whitson stopped payment on a check, claiming that the festival vendor provided spoiled food. (Whitson Dep., p. 305: 1-10).

203.

Plaintiff Whitson was arrested for fraudulently obtaining goods under false pretenses on July 31, 2015, in Bay City Michigan. (Exhibit 5).

204.

Plaintiff Whitson was ordered to pay restitution in the amount of $2,500 to Bosco Food Service or the criminal case would proceed to the Preliminary Examination. (*Id.* pp. 4-5).

205.

Mr. Whitson paid the restitution on January 5, 2016 and the case was dismissed. (*Id.*, pp. 4-5).

**IX.   Defendant Alexander's Defense to Ethics Complaint.**

    **A. Alexander's Emails at Issue**

206.

On February 1, 2017, Defendant Alexander sent an email with the subject line "Frivolous insulting ethics complaint!" to a group of city officials: the Council and

Mayor of Stockbridge, the City Attorney, the City Manager and the City Clerk. (Alexander Dep., p. 245: 4-8; and P-Ex. 24).

207.

Alexander considered BBQ Masters to be a "dump" because he had seen a trailer on blocks being used as a kitchen, and when he reviewed the file he saw photographs of spilled grease all over the parking lot. (Alexander Dep., p. 249: 2-5, 18-22).

208.

On February 4, 2017, Defendant Alexander sent an email with the subject line "Ethics Complaint made Public, I will not back down but press on for progress!" to the Council and Mayor of Stockbridge. (Alexander Dep., p. 181: 22-25; and P-Ex. 37).

209.

Defendant Alexander had seen information indicating that Mr. Whitson is a convicted domestic violence offender. (Alexander Dep., p. 187: 6-8, 15-16).

210.

On February 16, 2017, Defendant Alexander forwarded an email titled "Arick Whitson complaint….more victims coming forward contacting me" to Asia Ashley of the Henry Herald. (Alexander Dep., p. 228: 10-18; and P-Ex. 71).

211.

The information was not published in the Henry Herald. (Alexander Dep., p. 228: 19-20).

212.

This forwarded email includes information regarding court cases against Plaintiff Whitson and reports of Marvin Johnson's conversations with Plaintiff Whitson. (Alexander Dep., P-Ex. 71).

213.

On February 17, 2017, Defendant Alexander forwarded this email to the Henry County District Attorney. (*See* Exhibit 7).

214.

On February 24, 2017, Defendant Alexander forwarded this email to the Henry County Solicitor to provide past victims of false reporting. (*See* Exhibit 8, p. 2).

215.

On February 27, 2017, Defendant Alexander replied to an email from the Office Manager of the Henry County Solicitor's Office, explaining that he was forwarding the information for possible use in an upcoming prosecution for charges of filing a false police report and using false documents. (*See* Exhibit 8, p. 1).

216.

On February 16, 2017, Defendant Alexander forwarded an email from Bernice Randolph titled "Bad checks for Eric Smith & BBQ Masters" to a group of city officials: Councilwoman Neat Robinson, Councilman Anthony Ford, the City Attorney, and the City Manager, and copied Ms. Randolph, the original sender. (Alexander Dep., p. 213: 20-25; p. 215: 22-25; p. 216: 5-23; p. 218: 11-12 and P-Ex. 133).

217.

On February 17, 2017, Defendant Alexander forwarded the email from Bernice Randolph to the Henry County district attorney. (*See* Exhibit 9).

218.

On February 24, 2017, Defendant Alexander forwarded a copy of the email from Bernice Randolph to the Henry County solicitor because they were potential crimes. (Alexander Dep., p. 215: 1-2; p. 217: 22-25; p. 218: 1-6, 18-19; and P-Ex. 133).

219.

On March 2, 2016, Mr. Alexander sent an email to the investigator of the ethics complaint notifying him of the numerous calls he received regarding Eric L.

Smith/Arick Whitson and forwarding a copy of the email from Bernice Randolph. (Alexander Dep., p. 119: 24-25; p. 120: 1-2; p. 171: 10-17; and P-Ex. 40).

220.

Mr. Alexander wanted the investigator to know what kind of person he was dealing with and what facts had come to Alexander's attention. (Alexander Dep., p. 174: 3-20).

221.

When Defendant Alexander stated that Whitson had been removed from the sex offender registry in 2016, Alexander believed it to be true. (Alexander Dep., p. 120:4-5; p. 160: 22-25; p. 161: 1-2; p. 171: 18-22).

222.

Marvin Johnson called Defendant Alexander and told him to look up Eric L. Smith on the Henry County website. (Alexander Dep., p. 120: 17-24; p. 141: 13-15; p. 204: 13-14).

223.

Defendant Alexander went on the sheriff's page and found the name Eric L. Smith who had filed a petition to be removed from the sex offender registry. (Alexander Dep., p. 129: 4-9).

224.

The information available at that time did not include a photograph. (Alexander Dep., p. 129: 7-9).

225.

The individual seeking to be removed from the sex offender registry in Henry County, Georgia, shared Plaintiff's name and was convicted of a sexual offense in Ohio. (Alexander Dep., p. 204: 3-6; *See* Exhibit 10).

226.

Defendant Alexander attended the March 8, 2017, TPO hearing regarding Vanessa Reels and saw Plaintiff Whitson lie repeatedly. (Alexander Dep., p. 165: 12-24).

227.

On March 8, 2017, Defendant Alexander sent an email from his city email that he had forwarded from his personal email regarding the March 8, 2017, hearing to a group of city officials: the Council and Mayor of Stockbridge, the City Attorney, and the City Manager. (Alexander Dep., p. 226: 5-25; p. 227: 1-4; P-Ex. 41).

### B. Facebook Posts At Issue

#### 228.

Defendant Alexander posted on his Because We Care Henry County –

Atlanta South Facebook page that Whitson, who recently was indicted by the State

of Georgia for falsely reporting a robbery of his business and using false

documents in the commission of a crime and was issued a one-year protective

order, is "grimy." (Exhibit 11).

#### 229.

Defendant Alexander posted on his Because We Care Henry County

Facebook page a post that BBQ Masters is unsanitary and unsafe because it has a

trailer on cement blocks sitting in a dirty oil-filled parking lot. (Alexander Dep., p.

188: 17-19; p. 189: 12-19).

### X.    Plaintiff Whitson Cannot Prove Damages.

#### 230.

Plaintiff Whitson began having financial troubles in spring of 2016.

(Whitson Dep., p. 29:18-19; p. 31:15-25; p. 32: 1-5).

#### 231.

Plaintiff Whitson filed a bankruptcy petition on February 4, 2017. (Whitson

Dep., p. 28: 15-24; p. 34: 5-11; and D-Ex. 4).

Respectfully submitted this 10th day of February, 2020.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

/s/ *Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260
Marisa M. Beller
Georgia Bar No. 845893

Meridian II, Suite 2000
275 Scientific Drive
Norcross, GA 30092
404-881-2623
404-881-2630 (Fax)
kwoodward@cmlawfirm.com
mbeller@cmlawfirm.com
*Counsel for Defendant Elton Alexander*

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1</u>

The undersigned attests that this document was prepared in Times New Roman, 14-point font that complies with this Court's Rules.

This 10th day of February, 2020.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

<u>*/s/ Karen E. Woodward*</u>
Karen E. Woodward
Georgia Bar No. 775260

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day electronically filed **DEFENDANT ELTON ALEXANDER'S STATEMENT OF MATERIAL FACTS** with the Clerk of Court using the CM/ECF system, which will serve electronic copies of same upon all counsel of record, as follows:

| | |
|---|---|
| Gregory K. Hecht, Esq.<br>Michael Warner, Esq.<br>Hecht Walker, P.C.<br>205 Corporate Center Dr.<br>Stockbridge, GA 30281<br>greg@hmhwlaw.com<br><br>*(Attorneys for Plaintiffs)* | LaTonya Nix Wiley, Esq.\<br>The Wiley Law Firm<br>1100 Peachtree St., NE, #200<br>Atlanta, GA 30309<br>wileylaw@aol.com<br><br>*(Attorneys for Plaintiffs)* |
| Harvey S. Gray, Esq.<br>Alex M. Joseph, Esq.<br>Gray, Rust, St. Amand,<br>Moffett & Brieske, LLP<br>1700 Atlanta Plaza<br>950 E. Paces Ferry Rd.<br>Atlanta, GA 30326<br>hgray@grsmb.com<br>ajoseph@grsmb.com<br><br>*(Attorneys for Defendant City of Stockbridge)* | |

This 10th day of February, 2020.

/s/ Karen E. Woodward
Karen E. Woodward